The case today is 14-1864, United States v. Apollonia-Ortiz-Islas. May it please the Court. The central question in this case is when a broker representing the seller of a product becomes liable for the buyer's use of that product. In this case, Mr. Ortiz-Islas was essentially a middleman, a broker, representing sellers of cocaine, and the person to whom that cocaine was sold took that cocaine from Houston, Texas, transported it up through Maine, across the border, and into Canada. And the government's case against him is that he conspired with the distributors of that cocaine across the United States, through Maine, and into Canada. The record here does not support a finding that that broker joined the conspiracy to distribute the drugs across the country and into Canada. Well, the record does show, doesn't it, that he knew he was in communication with somebody who was involved in the smuggling of those drugs from Maine into Canada. He was making cell phone calls to a telephone in Maine. So wasn't he aware that this total network of which he was a part at the southern end was a network which extended all the way to the state of Maine and then across the border? Well, the record doesn't go quite that far, I don't think, Your Honor. Wasn't he making phone calls to, I forget the man's name, the sort of manager of all of this. Wasn't he making phone calls to him? Mr. LeBlanc was the central manager, and Mr. Ortiz was making telephone calls to Mr. LeBlanc. However, all that's shown about what he knows of Mr. LeBlanc is that Mr. LeBlanc is the person making phone calls to a Maine number. Well, if you can presume that he looks up the area code and decides that that area code is where it's from as opposed to simply dialing a number, I don't think there's anything in the record to show that somebody in Houston, Texas, would be familiar with necessarily the Maine area. No, but it's confident evidence to that effect. You may argue about the strength of the evidence, but if I make a phone call to an area code that's not mine, that is some confident evidence to the effect that I knew I was making a call to the area covered by the code, isn't it? Well, first of all, I don't think that's necessarily true in this day and age. Many people have cell phones that are not in any way connected with the area code that they're making calls to. That goes to the weight of the evidence. It doesn't go to its competence in raising a tendency to prove the point. Isn't that so? That may be, Your Honor, but I would suggest that certainly the area code was in no way a focus of the evidence at trial or the government's case at trial. It wasn't argued in any way by either of the parties that because the area code on a telephone number was a Maine area code that, therefore, that was a connection with Maine. The government's central focus of why it is that Mr. Ortiz's list was somehow connected out of the jurisdiction was simply that he knew that Mr. LeBlanc was Canadian. Does he have to know the – I guess two things. Does he have to know, in your view, and then why would this be, does he have to know not only that he is part of a larger network, but the details of the scope of that network? And the reason I ask is because he's not selling a small quantity and he's selling it repeatedly and he's selling it to somebody who I think you could draw a fair inference is not a neighbor. So what I think – I follow the government's argument in saying, look, he's clearly engaged with someone who's part of a larger network and he's repeatedly selling to it. As I understand your argument, he doesn't know, you can't say from this record, this is your contention, exactly how far that network extends or what it does, that it goes through Maine up to Canada. But is that necessary? In other words, he's clearly participating in a larger network that LeBlanc is running. If it turns out LeBlanc is running it from Maine up to Canada, why is it a defense for your client to say, well, I didn't realize LeBlanc's thing worked exactly that way, when he knows he's part of LeBlanc's network? Well, I think that's maybe where the distinction is. I think the record is a little thinner as to the number of times these transactions occurred than the government suggests to begin with, and I'll come back to that. But the key is that he has to agree to participation in Mr. LeBlanc's network, and that's where – But what I'm asking is if you seem to be saying he couldn't have made that agreement unless he knew LeBlanc's network, all that there's evidence in the record showing, he knew exactly where LeBlanc's network worked. And I'm asking why isn't it enough that he knew he was joining LeBlanc's network and that it was a big one? Knowledge – first of all, knowledge never suffices. Knowledge that he joined – he joined – An intention – An intention to join LeBlanc's network. Why does it matter whether the record shows exactly what he knew about how far that network extended? Frankly, Your Honor, it doesn't matter. What matters is what he intended. So what the record does show is that Ortiz's list was completely indifferent to whatever LeBlanc did with the cocaine once it was sold to LeBlanc. But doesn't the network show that he intended to be part of LeBlanc's network? That's where I think the record falls. How does it fall short on that, since he had repeated large-scale transactions with LeBlanc? Well, first of all, in terms of the number of transactions, the government suggested there were eight to 12 transactions. I would suggest the record doesn't come close to supporting that. Suppose it does show eight to 12. Well, the reason why I – Suppose it does show eight to 12. I think then that would be a stronger case for the government. So why does the government lose if it does show eight to 12 large-scale drug transactions with LeBlanc? Because simply the number of sales in and of itself doesn't – in the broader scheme of this case, Mr. Ortiz's list was regularly selling or brokering cocaine sales on behalf of these sellers to several different sources. Mr. LeBlanc was only one source of many. And on the flip side of it, Mr. LeBlanc was buying cocaine from several different sources. Well, isn't the fact that your client up-fronted at least one shipment with a promise to pay indicative of his intent to be part of the larger network? Well, I'm not sure that – Mr. LeBlanc has estimated that there were – that he bought approximately 15 to 18 kilos of cocaine from Mr. Ortiz's list. There may – he is – he did testify that he was on one occasion fronted one kilo of cocaine. I think given the amount of cocaine that was being bought – for instance, Mr. Hallett estimated that he drove 37 kilos total, not knowing who the supplier was. But up-fronting cocaine suggests that there's a level of trust between the participants. Well, I think given the scale of – if he's dealt a total of 15 to 18 kilos, I'm not sure that one additional kilo does demonstrate that much additional trust, to the extent that it does demonstrate that he's going to be paid later for that one kilo. But it's a piece of the cumulative evidence, isn't it? I think it is, but I would suggest that the great weight of the evidence does not support the finding that he joined into this. Let me go back to a subsidiary point in that argument that you were making, and you alluded to it at the beginning. You said the inadequate evidence of his intent that this so-called – this alleged conspiracy should succeed. Isn't the answer to that the amount of – excuse me – the amount of evidence that he was, as you put it, brokering wholesale quantities of illegal drugs? If you're doing that, you obviously have to understand that you're doing that as part of a network to sell drugs illegally. If you want to stay in business, you want that network to succeed. So isn't it impossible for you on the evidence to argue that he was indifferent to the success of the conspiracy? Well, first of all, there was evidence introduced by the government to the effect that Mr. Ortiz's listeners, his suppliers, were indifferent. And there was also evidence to the effect that – Well, they were indifferent in the sense that if there were a loss in these illegal transactions, the loss did not fall on them. But it seems to me that the very fact of the quantities involved meant they were engaged in business, and you're not indifferent to the ultimate success of that business, because the ultimate success determines whether you're going to stay in business or not. Well, I think that's true to an extent, but that would be true with any product that's being distributed, and I think that's where I begin. So, for instance, if it were illegal to bus schoolchildren to school, would the dealer who sells school buses on behalf of a school bus manufacturer have joined into a conspiracy to bus schoolchildren to school? I think the use to which the buyer puts that product – at some level, you could say that the entire chain of production then becomes a conspiracy, and if that's so, even low-level street dealers at that point would know, of course, that they're buying cocaine from wholesale dealers who know that that wholesale cocaine is being made by producers. And at that point, the law of conspiracy becomes so attenuated that what's missing is an intention to join into an agreement with another person to further a shared criminal end, and I think that's what's missing here in this case. So, yes, it is – he's another person that's being sold cocaine by Mr. Ortiz-Izlis, and yes, it would be good for Mr. LeBlanc to come back and purchase again, but the fact that when Mr. LeBlanc wasn't able to purchase, that cocaine was sold within a week, I think demonstrates that particularly the Mexican suppliers that are supplying to Mr. Ortiz, who he's representing at these deals, really don't care. They've got plenty of buyers. LeBlanc is just one more buyer to them. Well, what that argument may prove is that your client was a member of more than one conspiracy, but not that he was indifferent to the success of the conspiracies that he joined. Well, that was precisely the defense at trial, and that's precisely, I think, the issue that this appeal raises is whether the government proved he was part of a conspiracy to simply distribute cocaine in Texas to anybody that would come along, or whether he really conspired with Mr. LeBlanc for Mr. LeBlanc to distribute the cocaine. And I think that's where the distinction lies in this case, so that, yes, Mr. Ortiz-Izlis may well have intended to sell cocaine to Mr. Ortiz-Izlis, to Mr. LeBlanc, but really doesn't have a stake in what Mr. LeBlanc does with it, as opposed to, but obviously there's a conspiracy there. He's got suppliers, he's got people coming to these deals, he's arranging the deals, and that's what's not in dispute. Really what's in dispute is whether he ever joined the conspiracy for Mr. LeBlanc to sell the cocaine. Can I just get a sense of how you would draw the line? Suppose there was some evidence of your client saying, LeBlanc is one of my top clients, he has his own network, and I sell to him all the time. I think that would be a stronger case than this case. How come a jury couldn't infer from this evidence that that was the relationship? Because he did sell to him frequently. I understand you're going to contest how many times, but he sold to him frequently. It's at a wholesale level. He easily could conclude, since I'm selling wholesale quantities a significant number of times to LeBlanc, that LeBlanc has a network. So what's the difference between this evidence and this evidence, plus the statement that you suggest would be a stronger case for the government? Well, I see that I'm almost out of time. May I answer your question? Yeah. What I would suggest, Your Honor, is, first of all, the difference between this evidence is, in fact, that Mr. LeBlanc estimated 15 to 18 kilos. The evidence demonstrated that these deals were no less than 5 kilos per deal. So really, we're talking about no more than 3 transactions. We're not talking about the 8 to 12 transactions here. And the vast majority of this cocaine is actually coming from other sources that are not Mr. Ortiz's list. So I think that's the distinction. Thank you. Thank you, Your Honors. Good morning, Your Honors. May I please the Court, Renee Bunker, on behalf of the United States. Good morning. The difference between school buses and cocaine, of course, whether you're selling one at a time or 1,000 grams at a time or kilo quantities, is that cocaine is illegal. And the evidence here, to start with, I think, Justice Souter's question, the evidence showed that Mr. Ortiz Eastloss knew early on, there was testimony, that they told him that LeBlanc was from Canada. And then LeBlanc himself testified that he told Ortiz that he was from Canada. And there was the phone traffic as well, but there was more than that because after that first introduction, which would be a better argument for the appellant, after that first 3-kilogram transaction that the cooperators testified transpired after McDonald and Charles introduced Ortiz to LeBlanc in Texas, that introduction flourished. And Charles testified that he alone transported, made at least six trips, transporting cocaine that was bought specifically from Ortiz Eastloss to Maine. And he had those multiple roles as not only the middleman, like McDonald, but also having transported on at least six occasions the cocaine purchased directly from Ortiz Eastloss. And Judge Barron, your questions about the sheer size of the quantities involved here, whether it's 15 to 18 kilograms over an 18 to 24-month period, would certainly have put Mr. Ortiz on notice that he was engaged in a larger trafficking organization, which the evidence showed that he did. And nor does, based on the law or any case that we've cited to or the appellant has cited to, does the defendant have to be aware of all of the intricacies or even that it ultimately went to Canada, though the evidence showed that he knew that LeBlanc was from Canada. Remember the day of the September 18 seizure, Jose Duarte was with Ortiz at that takedown, and he said he knew that they were waiting for a white guy from Canada to bring the drugs. So if Mr. Ortiz told LeBlanc, look, don't tell me nothing from nothing, I'm going to sell you these drugs and that's it, would that insulate him from conspiratorial culpability? No, the law can't be that. Willful blindness, I suppose, but that's certainly not what the evidence showed here. The indifference, the evidence, the argument that the defendant was indifferent contradicts the evidence, and these calls, the recorded calls are quite telling. Look at the May 30 telephone call after Charles goes to jail on that unrelated parole violation. What does Charles, that May 30 call, Charles calls his wife Amy, and what has Ortiz done during that time? Charles goes to jail and Ortiz, according to Amy, has been calling Amy asking for LeBlanc's number. He says, he's calling, he wants me to give him Matt's number too. And Charles testified that he explained, that doesn't show that he's indifferent, that's an affirmative act saying I want to keep a good thing going. And they have this discussion that we're not, you know, I'm not going to screw you to Charles, I'm going to keep you in as the middle man, notwithstanding you're in jail.  LeBlanc showing their long-lasting relationship, and they discuss the agreement that both Ortiz and LeBlanc will continue to pay Charles as the middle man. And then there's the July 9 conversation between LeBlanc and Ortiz, where Ortiz confirms that he was calling and he missed LeBlanc when LeBlanc failed to show in June because he had been arrested unbeknownst to Ortiz. But even there, Ortiz told LeBlanc, he said, I need you to come fast when I call you. In the September calls, Ortiz told LeBlanc, I'm waiting for you, I need you to send someone. He's waiting for his driver, LeBlanc's driver. And then that's where Ortiz, going to your question, Judge Thompson, or your point that the evidence was that both Hallett and LeBlanc testified that Ortiz had previously fronted LeBlanc one kilo of cocaine. And we submit that a kilogram of cocaine when it's traveling, as Ortiz knew, or the evidence suggests he knew, quite far, at least to Maine and over the border, is a significant event that would give Ortiz a significant interest in LeBlanc's drug trafficking activities. And that's not a mere buyer-seller relationship. Then look at the statements that were picked up on the wire that the undercover was wearing when he was with Ortiz on the day of the September 18th. So the government's position is that this goes way beyond mere knowledge, but that the evidence you're reciting now goes to Ortiz's desire that the enterprise succeed. Absolutely. From that first introduction, maybe if after that first three-kilogram transaction, things sort of went away, but everybody here was working really hard. That's why I think the events following Charles's arrest are somewhat more compelling in terms of who really wanted to keep this good thing going. And Ortiz, even to the day from that May 30, even before May 30, when he's been calling Amy to get Matt's number, and then Charles approves. He says, I gave Polo Matt's number, and I gave Matt Polo's number, too, to keep this thing going. September 18th, we have the conversation between the undercover and Ortiz, and that's where the undercover wants to, for safety reasons, go to a hotel and not this house, the house that LeBlanc had testified he had been to. And Ortiz himself tells LeBlanc on the phone, no, this is the house you've been there before. He said, you've been there, you know my friend, you work with him, too. You know I don't work in hotels. All one continuous scheme, and it's Ortiz who is gung-ho to get this transaction. So when you say keep this good thing going, the evidence you're talking about here certainly suggests that he wanted to keep the relationship with LeBlanc going as a purchaser of the cocaine that he was selling. Correct. But if I understand the defendant's argument, and it may be wrong, that's not the same thing as saying that he was interested in LeBlanc's network succeeding. He's indifferent as to what happens with the network. He wants anybody who will buy his cocaine to continue to buy it. But what evidence is there that he actually has an interest beyond, and maybe this is all there is but it's enough, beyond his desire to continually sell to LeBlanc, is there anything in the record that suggests he had an interest in LeBlanc's conspiracy to succeed? Do you follow what I'm? I think I do, Judge Barron. And first of all, a desire, an intent, an intention to keep selling to LeBlanc is enough, given the quantities that we're talking about this relationship. So going to that first part. Okay. Just on that first part, so I understand. When you say earlier, you don't have to know all the details of the conspiracy, and case law does suggest that. I guess there's just a question, do you have to know any of the details of it? Because what this argument suggests is, okay, I know who I'm selling to, and I know I'm selling large quantities. He must have a network, and I want to keep selling to him. I don't know anything more about it. Take Judge Thompson's example, LeBlanc says to him, you know, I'm not telling you anything, and Ortiz says, I don't want to know anything about what you do with it, but I really love selling you this cocaine, and I'd like to keep doing it. In what way does that make him part of LeBlanc's conspiracy? I think the test, Judge Barron, is whether the two enterprises are necessary or advantageous, I think is the phrase that I keep reading in the case law, and that's why that first step is not. He has to know it's for further distribution. I think that's where we get away from this sort of smaller quantity, mere buyer-seller relationship. I think if there was any inference that LeBlanc was just going off to use all of these quantities or throwing it in the ocean or something, we'd have a different case. I think the evidence is quite clear to support knowledge, not only that he's working with LeBlanc, but that LeBlanc is part of this. He knows it takes five to seven days also for LeBlanc to get there, and each of these transactions takes a lot of prearrangement with McDonald and Charles, and then when LeBlanc and Hallett or Randy, whoever gets down there, with LeBlanc and McDonald and Charles and Ortiz before this face-to-face meeting where the other owners also show up and wait for them. So I think it passes the advantageous test, and I think the evidence in this case where it's Ortiz trying to keep it going shows that it wasn't indifferent. He wasn't sitting around. The appellant is highlighted below that when the June transaction fell through, those nine kilograms ultimately were sold and went back to the owners, but that didn't happen until a week and a half later. According to Ortiz's and his son's own statements. So that's not indifferent. You're hoping and waiting for your loyal customer, LeBlanc, who's giving you some pretty good business, and they keep waiting for the Canadians to show up and they keep waiting for the Canadians to show up. So I think that passes the advantageous test from both ends and easily brings Mr. Ortiz Islas into this conspiracy. Unless the Court has further questions, we'll submit on the briefs. Thank you.